IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

FE DIGITAL INVESTMENTS LIMITED,   )
                                  )
                Plaintiff,         )
                                  )
     v.                            )     No.  06 C 4807
                                  )
LYRIC HUGHES HALE,                )
                                  )
                Defendant.         )

                        MEMORANDUM ORDER

     FE Digital Investments Limited ("FE Digital") has sued Lyric Hughes Hale ("Hale"), tendering two counts asserting breach of contract and one count asserting common-law fraud.  FE Digital charges Hale, Chief Executive Officer of China Online ("China Online"), with having recklessly misrepresented the financial health of that corporation in September 2001 when Digital contracted to purchase a block of its shares for $1.5 million.[1] FE Digital also charges that Hale failed to live up to a promise she made to procure the sale of those shares under the terms set out in a contemporaneous Letter of Undertaking ("Letter") signed by Hale and agreed to in writing by FE Digital.

     FE Digital has now moved to resolve its claims against Hale via summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, FE Digital's motion for summary judgment is granted on the fraud

---

     [1] Although the Subscription Agreement ("Agreement," F. Ex. 1) bears a September 17, 2001 date, Hale actually signed it on September 18.

claim and the breach of contract claim stemming from the share purchase Agreement, entitling it to relief that renders moot the breach of contract claim based on the Letter.

## Summary Judgment Standards

Well-established Rule 56 principles impose on parties wishing to prevail on summary judgment the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must consider the evidentiary record in the light most favorable to Hale and draw all reasonable inferences in her favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment, Hale must produce "more than a mere scintilla of evidence to support h[er] position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). If the record were to reveal that no reasonable jury could find in favor of Hale, summary judgment will be granted (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

To evaluate that possibility, what follows is a summary of the facts, viewed in a light favorable to Hale under the criteria prescribed by Rule 56 and this District Court's LR 56.1.[2] And

---

[2] LR 56.1 implements Rule 56 by requiring each party to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed upon.

2

that obviates the need, in the evidentiary recital, to repeat "according to Hale" or the like or to identify any conflicting account, though references to the latter are sometimes included for purely informational purposes.

Background

Events giving rise to this litigation arose from the Agreement among FE Digital, China Online and Hale (F. St. ¶7) under which FE Digital agreed to pay $1.5 million to purchase China Online shares (id.). Hale executed the Agreement both on behalf of China Online and in her individual capacity (id. ¶8).

Agreement Art. II and its Section 2.5 (copied verbatim) provide in relevant part:

> The Company and Hughes[3] (each severally and together jointly) hereby represent and warrant to the Investor as follows:
>
> \*       \*       \*
>
> Section 2.5  Financial Statements.  The financial statements attached hereto as Exhibit 2.5 (the "Financial Statements") (i) do not contain or reflect any material inaccuracies or discrepancies, (ii) disclose a true and fair view of the financial position of the Company both as at 31 July 2001 and, (subject to changes required to reflect the normal day to day

---

This opinion cites to FE Digital's statement and its exhibits as "F. St. ¶--" and "F. Ex. --" respectively. All "F. St." citations are to its uncontroverted assertions. Excerpts from Hale's deposition will be cited "H. Dep. --."

[3] [Footnote by this Court] At the time of the Agreement Hale was known as "Lyric Hughes," so that all references to "Hughes" denote Hale. And FE Digital was of course the "Investor."

3

> operation of the business of the Company between 1
> August 2001 and the Closing Date, which operation has
> not resulted in the Company incurring any liabilities
> [A] other than in the normal course of business or
> [B] which may or could adversely effect the ability of
> the Company to carry on business or which if disclosed
> to the Investor would materially influence the
> Investors decision to invest in the Company), the
> Closing Date, and (iii) have been prepared in
> accordance with United States' generally accepted
> accounting principles and practice subject to the
> absence of footnote disclosures and to normal year-end
> adjustments.  Other than (i) the amount of
> US$1,168,670.05 specified in the Financial Statements
> as "Total Accounts Payable," (as adjusted by virtue of
> the matters referred to in (ii) above of this Section
> 2.5)(ii) the amount specified in Section 5.1(b) of this
> Agreement, and (iii) the expenses specified in the
> Monthly Expense Summary (as defined below), there are
> no other debts or liabilities of the Company that will
> become due and owing prior to December 31, 2001.

And as required by that provision, Hale produced a copy of China Online's July 31, 2001 financial statements as Agreement Ex. 2.5 (F. St. ¶11).

Hale's deposition testimony as to the financial statements was that she neither reviewed the actual numbers nor verified their accuracy with any members of China Online's financial team (F. St. ¶¶13, 17).  She further testified that she informed FE Digital's Director Victor Chu ("Chu") that China Online's financial statements were "not necessarily up-to-date" because it lacked the capital to pay its accounting firm, so there had not been a recent audit (H. Dep. 36).  After receiving and reviewing the July 31, 2001 financial statements, FE Digital entered into the Agreement (F. St. ¶20).

That financial picture, as reflected in the statements, darkened dramatically on November 5, 2001 when FE Digital received an email from China Online's controller and director of finance Daniel King ("King"), who reported that the numbers in the July 31, 2001 financial statement were "preliminary and unaudited and obviously have errors" (F. St. ¶15). "Errors" was a major understatement, for the new numbers presented by King reflected very substantial divergences from those in the Agreement's Financial Statements, which had (id. ¶16, emphasis in original):

- <u>Understated</u> China Online's total accounts payable as of July 31, 2001 by $350,806 (as $1,168,670 rather than $1,519,476);

- <u>Understated</u> China Online's total accrued expenses as of July 31, 2001 by $1,098, 332 (as negative $536,177 rather than $562,155);

- <u>Understated</u> China Online's accrued unit appreciation as of July 31, 2001 by $373,100 (as $92,481 rather than $465,581); and

- <u>Overstated</u> China Online's total equity as of July 31, 2001 by $1,777,539 (as $688,355 rather than negative $1,089,184).

Obviously the last of those disparities, which of course reflected the total of the individual variances that impacted on China Online's true net worth, transformed a roseate (and false) picture of its financial health into the dismal truth.

So much for the facts relevant to FE Digital's Agreement-based claims. As for the contemporaneously executed Letter (F.

5

St. ¶24), Hale there personally undertook these obligations "[in] my capacity as a stockholder in the Company, and not [in] my capacity as an officer or director of the Company":

> Unless within 18 months of the Closing either:
>
> > (a) the Company (or its businesses) is sold at a valuation of not less than US $15 million plus liabilities; or
> >
> > (b) the Company has made an initial public offering of its securities, such that stockholders in the Company (including First Eastern[4]) would obtain liquidity from their investments,
>
> I agree to procure the sale, to third parties, of First Eastern's holdings in the Company (including any holdings arising by virtue of First Eastern's converting any debt of the Company to any equity in the Company) at a consideration of not less than First Eastern's acquisition costs.
>
> My undertakings in relation to paragraphs (a) and (b) above will not apply in the event that within 6 months hereof the Company secures a strategic investor being a multinational corporation in the media industry which subscribes for not less than 20% of the stock of the Company for a consideration based on a valuation of the Company for not less than US$25 million.

Within the prescribed 18 month post-Closing period, neither China Online nor any of its businesses had been sold according to the terms of the Letter, nor had China Online made an initial public offering of its securities (F. St. ¶¶26-27). Nor, within the Letter's specified six month period, had any multinational

---

[4] [Footnote by this Court] In the Letter FE Digital or its affiliates or nominees are collectively referred to as "First Eastern" (F. Ex. 2).

6

corporation subscribed for at least 20% of China Online's stock (id. ¶29).

FE Digital then communicated with Hale via fax on March 25, 2003, reminding her of her obligation to procure the sale of FE Digital's shares of China Online pursuant to the Letter (F. St. ¶33). On April 1 Hale responded via email that she would "continue to work tirelessly to find a new investor" to buy FE Digital's holdings (id. ¶36), and from her testimony she did apply her efforts toward getting new investors (id. ¶¶37-54).

FE Digital filed its Complaint against Hale on September 6, 2006, basing this Court's subject matter jurisdiction on diversity of citizenship: FE Digital is a corporation organized under the laws of the British Virgin Islands with its principal place of business in Hong Kong, while Hale is an Illinois citizen. Under familiar Erie v. Tompkins principles, then, Illinois' choice of law doctrines dictate the substantive law to which this Court must look.

In that respect Agreement ¶7.8 states that it "will be governed by and construed under the laws of the State of Delaware,"[5] while the Letter has like language looking to the laws of Hong Kong. Fortunately none of the potentially tangled

---

[5] It is at least questionable whether that choice of law provision applies to a claim of fraud in the inducement, which if successful would invalidate the Agreement (including that provision).

web created by those provisions and the consideration just stated in n.5 needs to be sorted out, for the parties' very limited caselaw references look only to the substantive law of this forum state, Illinois--and that being so, our Court of Appeals' caselaw allows this Court to follow the parties' lead. As <u>UNI Imports, Inc. v. Aparacor, Inc.</u>, 978 F.2d 984, 986 (7th Cir. 1992) has put it:

> The parties have argued only Illinois law; we accept their implicit choice of the law of the forum state.

Fraud Claim

FE Digital claims that the falsity of Hale's statements in the Agreement that the attached financial statements "do not contain or reflect any material inaccuracies or discrepancies" and "disclose a true and fair view of the financial position of" China Online entitle it to recovery on the basis of fraud. Just last month <u>Fox v. Heimann</u>, Nos. 1-06-0414, 1-06-0697, 2007 WL 1988966, at *9 (Ill. App. 1st Dist. July 10) articulated the burden that a plaintiff such as FE Digital must bear to prevail:

> [It] must prove that the defendants intentionally made a false statement of material fact or failed to disclose a material fact, that the plaintiff had a right to rely on the false statement or omission, that the statement or omission was made for the purpose of inducing reliance thereon, the plaintiff, in fact, relied on the statement or omission, and the plaintiff suffered injury as a direct result.

FE Digital's fraud claim will be measured against that yardstick.

At the heart of that claim is FE Digital's contention that

the July 31, 2001 financial statements presented by Hale contained major errors, in the aggregate converting a reported <u>positive</u> net worth of nearly $700,000 into a <u>negative</u> net worth in excess of $1 million.[6]  <u>Niemoth v. Kohls</u>, 171 Ill.App.3d 54, 69, 524 N.E.2d 1085, 1094 (1st Dist. 1988) has taught that "representations as to the past income of a business are actionable"--and that is surely no less true as to such a massive disparity in net worth that by definition stemmed from disparities between the reported and the actual net income in prior years.

That fits to a T the alternative first element stated in <u>Fox</u>:  Hale "failed to disclose a material fact" when she delivered the false set of financial statements--not simply false, but vastly and materially false.  Her asserted failure to have checked the numbers (which is credited for present purposes) cannot shield her, for who is better able to be informed as to a corporation's true financial health than its active Chief Executive Officer?  At a minimum the nondisclosure of that massive disparity constitutes actionable recklessness (see, e.g.,

---

[6] Although Dickens' Mr. Micawber would scarcely pass <u>Daubert</u>-type screening as an expert witness on financial matters, his classic comment in chapter 12 of <u>David Copperfield</u> bears repeating in the current context:

> Annual income twenty pounds, annual expenditure nineteen nineteen six, result happiness.  Annual income twenty pounds, annual expenditure twenty pounds ought and six, result misery.

9

Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004), construing and applying Illinois law).

As for the remaining Fox-identified elements of an actionable fraud claim, with the possible exception of whether FE Digital had a right to rely on the false financial figures, simply reading those elements confirms that each is fully satisfied here. That the reported numbers for four different metrics of the company--its accounts payable, its total accrued expenses, its accrued unit appreciation and its total equity--were incorrect to such a major extent, and that FE Digital relied upon the reported financial information and thereafter suffered economic injury, are beyond dispute.

That leaves only Hale's contention that FE Digital cannot succeed on its fraud claim because it has not shown its detrimental reliance was justifiable. Hale says she informed FE Digital's Chu through "detailed discussion[s]" that China Online's accounting had not been subject to routine auditing due to financial constraints. In that respect she said to Chu, in conversations before the Agreement was executed, that "the accounting in the company was not necessarily up-to-date because we could not pay our accounting firm and that we also had not been able to complete an audit for the same reason" (H. Dep. 36). As Hale would have it, because FE Digital then "knew" that the accounting results had not been updated assiduously, it could not

10

have relied reasonably on the financial statements provided in the Agreement.

But Hale can find no solace in that disclaimer, for her asserted statements to Chu provide no insulation against such a marked violation of the Agreement's representations and warranties. After all, the Agreement contained no audit requirement, but rather imposed the less demanding requirements that the statements "(i) do not contain or reflect any material inaccuracies or discrepancies" or "(ii) disclose a true and fair view of the financial position of the Company."

Moreover, the carefully framed additional representations and warranties in Section 2.5 as to the absence of material changes after the date of the July 31, 2001 statements wholly undermine any possible contention that generalized comments of the kind that Hale said she made to Chu should somehow have raised a warning flag as to the massive unreliability of those financial statements. Nothing in Hales' comments hinted at, or even arguably alerted FE Digital as to the possibility of, the serious erosion of the stated value in China Online that was revealed only by the financial statements delivered <u>after</u> FE Digital had already parted company with its $1.5 million. As <u>Lagen v. Balcor Co.</u>, 274 Ill.App. 3d 11, 17, 653 N.E.2d 968, 973 (2d Dist. 1995) (internal citations and quotation marks omitted) has reconfirmed, while mere "silence in a business transaction

does not amount to fraud," a party's "duty to speak" is triggered "when [the] party's silence is accompanied by deceptive conduct or suppression of material facts resulting in an active deception." Hale violated that duty to speak when she negotiated the Agreement with FE Digital.

In sum, because Hale admits that the numbers in the financial statements that were an integral part of the Agreement were false and that she informed FE Digital only that the numbers might be somewhat outdated--not even suggesting, let alone stating, that four different metrics were greatly distorted--and because she has not made even a dent in any of the other components of FE Digital's fraud claim, FE Digital's motion for summary judgment on that claim is granted.

<u>Breach of Contract Claims</u>

What has already been said as to FE Digital's fraud claim applies with equal force to its breach of contract claim that is predicated on the falsity of the July 31, 2001 financial statements. Such falsity was plainly in direct contravention of Agreement Section 2.5's representations and warranties. If anything, the breach of contract claim is even further buttressed by the legal principles that bar Hale's ability to lean on her asserted statements to Chu--made before he executed the Agreement--that the numbers in the financial statements had not been subject to an audit and were not necessarily up to date.

12

On that score, any such attempt to vary the carefully detailed representations and warranties set out in Section 2.5 is torpedoed by the integration provision of Agreement Section 7.7:

> <u>Entire Agreement</u>.  This Agreement and the documents referred to herein constitute the entire agreement among the parties, and no party will be liable or bound to any other party in any manner by any warranties, representations or covenants except as specifically set forth herein or therein.

That is of course the contractual embodiment of the common law parol evidence rule, which "bars prior or contemporaneous oral statements from being admitted into evidence" (<u>McDonald's Corp. v. Butler Co.</u>, 158 Ill.App.3d 902, 909, 511 N.E.2d 912, 917 (2d Dist. 1987)).  Consequently FE Digital's motion for summary judgment on that breach of contract claim is also granted.

Finally, the analysis to this point makes it unnecessary to devote time or effort to FE Digital's remaining claim that Hale also breached the Letter by failing to procure the sale of FE Digital's China Online shares for at least $1.5 million unless one of three events--none of which happened--came to pass.  In her effort to defeat that claim, Hale has advanced an affirmative defense, contending that FE Digital offered her assurances that led her to believe she did not have to seek other investors and that she was therefore released from her obligation to find a buyer for FE Digital's shares.  In turn FE Digital points to other facts that it urges would essentially eviscerate Hale's affirmative defense.

13

All of that wrangling could well connote the existence of a genuine issue of material fact as to whether Hale reasonably believed that Chu's claimed assurances released her of her obligations under the Letter. But there is no need to go on with that analysis, for FE Digital's Prayer for Relief in its Amended Complaint is identical as to all three of its claims: It seeks a $1.5 million recovery. By its terms the Letter-based claim would call for no more than a $1.5 million award--certainly no more than FE Digital's entitlement on its just-adjudicated claims. Hence FE Digital's summary judgment motion as to the Letter-based claim is denied as moot.

## Conclusion

Because there is no genuine issue of material fact as to FE Digital's fraud and breach of contract claims arising out of the Agreement, it is entitled to judgment as a matter of law as to each of those claims. Its motion for summary judgment is granted in both those respects, while its motion for summary judgment as to the breach of contract claim arising under the Letter is denied as moot.

As for the relief to which FE Digital is entitled, it has concluded its Mem. 11 by asking for the entry of judgment in its favor and against Hale in the sum of $1.5 million. This Court so orders--but because FE Digital obtained China Online shares in exchange for that payment, a proper approach to the determination

14

of its damages requires that it now deliver those shares to Hale in exchange for her payment of the judgment amount.[7]

                                             _____
                                             Milton I. Shadur
                                             Senior United States District Judge

Date:   August 3, 2007

---

[7] Although the assignment that produced this opinion is far from the most complex of the many matters that this Court's outstanding law clerk Christie Tate has been called upon to deal with during her clerkship tenure, it is typical of the manner in which she has consistently gone well beyond the often scanty (and sometimes quite unhelpful) submissions by litigants' counsel in her generation of draft opinions for this Court's consideration. And because this is likely to be Christie's final work product before the now-imminent completion of her clerkship term, this Court would be remiss if it failed to give proper (and public) acknowledgment to the splendid work that she has done throughout the term--and it does so here. With that said, though, it should also be made clear that any errors that may have found their way into this final opinion now issued by this Court are its responsibility rather than Christie's, for every work product such as this one has been the result of this Court's word-by-word and sentence-by-sentence vetting and recasting of the law clerk's original draft.